# Howard v. Commonwealth.

October 13, 1950.

Watt M. Prichard, Judge.

P. H. Vincent for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, Thomas Burchett, Commonwealth Attorney for appellee.

STANLEY, COMMISSIONER—Affirming.

The conviction of the appellant, Clarence Howard, is for armed robbery, the penalty being life imprisonment. KRS 433.140.

The argument of insufficient evidence to take the case to the jury requires a brief statement of the testi-

mony. Mrs. Emma Davis, an elderly white woman in poor health, testified that the defendant, Clarence Howard, had come to her home in the late morning of July 11, 1949, saying he was looking for work. He was told there was none. During the afternoon when she was alone, lying on the couch, "that big colored fellow" came in and said, "I am a doctor. I can help you and Miss Sally both." He sat down in a chair close to the couch and did certain acts which manifested a purpose to rape the woman, the details of which need not be related. While this was going on, the defendant drew a pistol and "whipped it around in front of me." She screamed, and her companion, Miss Sally Martin, came in. He attacked her, tearing her clothing. The man had put his hat down over Mrs. Davis' purse, which was at the foot of the couch. He took it up "like that" when he went out. He had given no previous indication of an intent to rob the woman and had made no demand or said anything about money or the purse. The purse contained about $21.00 and Mrs. Davis' glasses case in which were some stamps and aspirin tablets.

Mrs. Davis described the man and his dress to the police. Two men were brought before her, but she said neither was her assailant. The police found the defendant in the neighborhood in an old building which was then in process of being torn down and brought him before Mrs. Davis. She readily identified him by his looks and his voice. Her empty purse was later found in a toilet room in a downtown building in which the defendant had been working to which he had a key. He had had no money that morning but was very drunk in the late afternoon and had been freely spending money. The pistol which was identified by Mrs. Davis had been taken away from him by a friend and he had dropped the glasses case which, with its contents, were also identified.

The defendant testified that he had been drinking heavily since the previous Saturday and denied that he was at or even able to be at Mrs. Davis' home on that Monday. His alibi was feebly sustained. One colored woman, in telling the story, said she had noticed the frost on the ground that morning. It was mid July.

The contention that the evidence was not sufficient to take the case to the jury because the testimony of the

prosecuting witness is too fantastic and too imaginary to be believed and was brought out by improper examination is wholly without merit.

The appellant argues that the crime of robbery was not proved. He submits that though the prosecuting witness was put in fear, it was not fear of being robbed and not fear induced by an intent to rob; hence, that the taking of the purse was only larceny. Further, that there is no evidence that the pistol was pointed at the victim or that there was any demonstration of a purpose to use it; also, that it could not be fired, hence, a failure to prove a case of armed robbery. The cases cited in support of the argument that the crime of robbery was not proven are where the property was obtained by stealth or otherwise than by violence or putting in fear, one or the other element being essential to establish the higher degree of crime. It has often been written that the distinguishing characteristic of violence or putting in fear must have preceded or been contemporaneous with the act of taking the property and that proof of a subsequent force or fear is not material. Jones v. Commonwealth, 115 Ky. 592, 74 S. W. 263, 103 Am. St. Rep. 340 and Armstrong v. Commonwealth, 190 Ky. 217, 277 S.W. 162, are typical. Here great fear and fright were created by the man. Though his entrance into the house and his primary or initial purpose may have been to commit a criminal assault, or even larceny rather than robbery, the certain fact is that the lady was under great terror at the time the defendant picked up and carried her purse away with the intention of stealing it. The whole occurrence was one transaction. It is not important whether Howard formed the purpose of stealing some item of property before he entered the room or whether it was an afterthought arising when he saw the purse on the couch. The fear once created continued to operate on the mind of the victim. If he availed himself of the state of terror in which he had placed Mrs. Davis, that was sufficient.

There are not many cases directly in point, and those that are do not present a state of facts as extreme as the present case. Hope v. People, 83 N Y. 418, 38 Am.Rep. 460; People v. Jordan, 303 Ill. 316, 135 N.E. 729, cited in 54 C. J. 1018. In Wynn v. Commonwealth, 135 Ky. 447, 122 S.W. 516, we ruled that if a police officer, after having arrested a person for public drunkenness,

took advantage of the duress under which the arrest had placed the man, and by putting the prisoner in fear took money from him, feloniously intending at the time to convert it to his own use, his act in doing so was robbery. Roberson, Kentucky Criminal Law, Sec. 611, on authority of an early English case says: "Where a man attempted to commit a rape, and the woman offered him money to desist, which he took, this was held to be robbery, although he did not demand the money; for the woman, from violence and terror occasioned by the prisoner's behavior, and to save her chastity, offered the money, which it was clear she would not otherwise have given."

It would be to draw an illogical conclusion and to declare too sharp a technicality to say that the offense was not robbery, but merely larceny, where the felonious taking of property was from or in the immediate presence of a person then terrified and overcome by an overpowering fear from the felon's violence, even though he made no express demand for her money.

We find no merit in the argument that, conceding for the purpose that the crime of robbery was established, it was not "armed robbery" because the defendant only twirled the pistol around and made no threat to use it if the victim refused to give up her purse. The language of the statute, KRS 433.140, is that if a person in committing the act of robbery "uses or displays any pistol" he is guilty of "armed robbery." The statute is construed in Peck v. Commonwealth, 286 Ky. 347, 150 S. W. 2d 919, as not requiring that an attempt or manifestation to use the weapon for the immediate purpose of robbing a person be made, the mere display of it as an instrument to create fear, being enough. That was abundantly proved in the present case.

The Commonwealth's Attorney in the closing argument stated that if the jury should fix the penalty at life imprisonment, the defendant would be eligible for parole after having served eight years. The penalty for the crime, as the Court instructed the jury, was either death or life imprisonment. Conceding arguendo the statement was improper and the Court should have sustained the defendant's objection to it, it is readily apparent the defendant was not hurt by the statement since the jury either ignored it or was willing that the

defendant should be so paroled, for it fixed the penalty at life imprisonment.

The attorney for the appellant who was appointed to defend him has ably represented him as an act of public duty. The defendant has had a fair trial, and we are of opinion that the judgment should be, and it is

Affirmed.